UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORA MEDLEY, | No. 2:22-cv-00227 DJC SCR P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| S. PFITZER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. On August 24, 2023, the previously assigned magistrate judge appointed counsel to plaintiff for the limited purpose of "investigating the claim, then drafting and filling an amended complaint." (ECF No. 89.) Counsel filed the second amended complaint ("SAC") on November 12, 2024 (ECF No. 100), thereby fulfilling their obligations pursuant to the limited appointment order.

The SAC is now before the court for screening pursuant to 28 U.S.C. § 1915A. However, upon review, the undersigned has determined that the SAC contains misjoined claims that preclude screening at this time. To avoid prejudice to plaintiff, namely the barring of claims by the statute of limitations if they were dismissed with leave to amend, the undersigned recommends that the misjoined claims be severed and proceed in a new action consistent with the instructions below.

1

# FACTUAL ALLEGATIONS

## I. Facts Relating to Medical Care and Disability Accommodations

The facts forming the basis of this action occurred at California Health Care Facility, Stockton ("CHCF"), which plaintiff entered on or about February 29, 2016. (ECF No. 100 at 4, ¶ 24-25.) Plaintiff has a well-documented history of mental health and disability diagnoses dating back at least to her initial incarceration in 2000. (Id. at 3, ¶¶ 20-21.) Because she is transgender, intersex, and has diagnoses of Autism Spectrum Disorder, gender dysphoria, and Sensory Integration Disorder, plaintiff is vulnerable to and at risk of sexual victimization. (Id. at 4, ¶ 25.)

Plaintiff has participated in the Department of Corrections and Rehabilitation's (CDCR) Developmental Disability Program (DDP) since July 20, 2015. (ECF No. 100 at 4, ¶ 25.) Upon her DDP screening, plaintiff was designated DD2, which required her to receive adaptive support and accommodations. (Id.) As a DD2 she was required to be housed in a designated DDP building, unit, or wing. Plaintiff also has physical disabilities that require a lower/bottom bunk and housing on the ground floor. (Id.) In March 2016, during plaintiff's intake processing at CHCF, she was designated as a DD2 and housed in the E1-Fox housing unit. (Id., ¶ 26.)

Plaintiff was born intersex and experiences Congenital Adrenal Hyperplasia ("CAH"). In 2016 plaintiff was prescribed Liquid Nutritional Supplement ("LNS"), Glucerna 1.5, taken four times daily to accommodate her IBS-C, Autism, CAH, and other food intolerances. (ECF No. 100 at 4, ¶ 27.) When plaintiff is low weight or does not receive sufficient caloric intake, she experiences physical symptoms such as increased pain in her feet and hands and a sensation as if she is having a seizure. Plaintiff also experiences sensory issues that cause issues with her memory, increased impulsivity, and mood. (Id. at 4-5, ¶ 28.) As a result of the treatment plan that included Glucerna, plaintiff was able to gain and maintain her weight. (Id. at 5, ¶ 29.) Other LNS supplements, such as Boost and Ensure, do not have the same effect on her. (Id.)

In 2018, defendant Dr. Samiinia removed plaintiff's diagnosis of gender dysphoria and Autism Spectrum Disorder without providing a reason. As a result, plaintiff was reclassified as a DD1 in the DDP and no longer met the criteria for single cell housing. (ECF No. 100 at 5-6, ¶ 32.) One week later, Defendant Samiinia reinstated plaintiff's diagnoses but plaintiff's DD2

classification was not reinstated. (Id. at 6, ¶ 33.)

On or about January 4, 2021, defendant Vicencio discontinued plaintiff's prescription for Glucerna 1.5 and replaced it with another LNS, Ensure 1.5. Plaintiff had been taking Glucerna since 2018 as treatment for plaintiff's digestive disorder. Since Ensure has half the caloric density as Glucerna, more sugar, and made plaintiff feel ill, weak, and faint multiple times. (ECF No. 100 at 8, ¶ 43.) On January 15, 2021, plaintiff was put back on the Glucerna. (Id., ¶ 44.)

On March 23, 2021, plaintiff met with Dr. Suresh Hosuru. (ECF No. 100 at 9, ¶ 46.) A few days later, plaintiff was put on Ensure instead of Glucerna because it was out of stock. (Id.) On April 5, 2021, plaintiff filed a grievance regarding the change. (Id., ¶ 47.) On April 7, 2021, the Reasonable Accommodation Panel ("RAP") denied her request for Glucerna with no acknowledgment that it was a treatment for her Autism, and thus also an accommodation. (Id., ¶ 48.) Defendants Hall, Williams, and Petersen were on the RAP that denied the request. (Id.)

On April 8, 2021, plaintiff met with Melanie Henrey, who said "[she] did not know why [plaintiff] gets Glucerna." (ECF No. 100 at 9, ¶ 49.) Plaintiff told Henrey that she had been receiving Glucerna since 2018 and it was a necessary accommodation for her diagnoses of Autism Spectrum Disorder, IBS, CAH, and other digestive disorders, as well as part of her treatment plan to gain weight and maintain a healthy body weight. During this conversation, Henrey threatened to end plaintiff's Glucerna's prescription because plaintiff filed a grievance.

On July 3, 2021, plaintiff was weighed at 145.5 lbs., down from her typical weight of 165 lbs. (ECF No. 100 at 9, ¶ 50.) On or about July 7, 2021, plaintiff's Glucerna prescription expired. (Id., ¶ 51.) On July 11, 2021, plaintiff's Glucerna prescription was reinstated but instead of receiving it four times a day as she did before, she was receiving it twice per day. (Id., ¶ 52.)

On or about July 10, 2021, defendant Elizabeth Byers visited plaintiff outside of her cell. Plaintiff had not previously met Byers and explained to her that due to her medical conditions, she is not able to eat the foods provided and that Glucerna has been her approved plan of care since 2018. Byers ignored plaintiff's explanation and informed her that she could not reinstate the Glucerna prescription if plaintiff "refused to eat." Throughout this interaction, Byers made multiple intimidating statements threatening to discontinue plaintiff's Glucerna prescription

1  altogether. (ECF No. 100 at 10, ¶ 54.) That same day, defendant Byers took plaintiff's weight
2  measurement and documented her weight as 135 lbs. (Id., ¶ 55.)
3        On or about August 6, 2021, plaintiff met with Defendant Hosuru. When plaintiff asked
4  to renew her Glucerna 4x prescription, Hosuru declined and told her that she would have to
5  "make up" with the dieticians—referring to Byers and Henrey—because it was a "team decision."
6  (ECF No. 100 at 11, ¶ 57.) Plaintiff told Hosuru that she was not able to eat the regular food
7  given to her or think clearly because she was not able to get enough food intake. Despite this,
8  Hosuru still placed plaintiff on a calorie restriction, limiting her access to Glucerna. (Id.)
9        On or about October 2023, plaintiff filed an 1824 reasonable accommodation request,
10 requesting: (1) to move from DD1 to DD2 status to receive increased protection and monitoring
11 from the staff, citing that her Autism and ADHD increase her susceptibility to sexual exploitation
12 outside presence of the staff, and (2) single cell status. (ECF No. 100 at 11, ¶ 60.) On or about
13 November 13, 2023, the RAP denied plaintiff's requests and removed plaintiff from the DDP
14 altogether. (Id., ¶ 61.) The RAP staff present included ADA Coordinator K. Petersen, Chief
15 Physician and Surgeon G. Williams, ADA Analyst L. Bucsit, and Senior Psychologist C.
16 Mohadjer. Plaintiff was removed from the DDP and her DD1 status was removed. Plaintiff no
17 longer receives adaptive supports and correctional officers have threatened to put her in a double-
18 cell, which prompts an increase in symptoms related to PTSD and Autism. (Id. at 11-12, ¶ 61.)

19  **II.    Facts Relating to Alleged Sexual Assault and Housing Discrimination**

20        During a medical examination on or about June 29, 2016, Dr. Williams inserted his
21  fingers into plaintiff's anus without her consent. (ECF No. 100 at 5, ¶ 30.) Plaintiff filed a 602
22  grievance regarding the incident and requested cease receiving treatment from Williams. (Id., ¶
23  31.) The request was denied, and plaintiff has been forced to continue to receive care from
24  Williams, which triggers her PTSD symptoms. (Id.)
25        On or about July 20, 2020, plaintiff was assigned Dr. Drey as her primary psychologist in
26  the Enhanced Outpatient Program ("EOP"). (ECF No. 100 at 6, ¶ 34.) Plaintiff first met with
27  Drey in August 2020. During their third meeting they had sexual intercourse. Plaintiff met with
28  Drey six times and each time they engaged in an "aggressive sexual relationship." (Id.) Plaintiff

did not consent to any of the sexual contact she had with Defendant Drey. (Id.) Drey's conduct caused plaintiff severe psychological damage and caused her to attempt suicide. (Id. at 7, ¶ 38.)

On October 5, 2020, plaintiff was taken to an Interdisciplinary Treatment Team meeting ("IDTT") by Defendants Drey and Arthur Hall to refer plaintiff to the Psychiatric Inpatient Program ("PIP") in the B-Yard Facility at CHCF as reprisal, retaliation, and cover up for staff misconduct and staff rape. (ECF No. 100 at 7, ¶ 39.) On October 13, 2020, with no 72-hour notice, plaintiff was rushed to a surprise hearing to determine whether her transfer to PIP was appropriate. (Id., ¶ 40.) At the hearing, the staff provided no documentation, and no witnesses and plaintiff was not allowed to ask questions or present evidence. The transfer was deemed appropriate and plaintiff was transferred to B-Yard on December 29, 2020. (Id.)

While in B-Yard, plaintiff experienced sexual and physical violence by other inmates, particularly due to her transgender status. She reported these incidents to the staff, but they did not monitor her interactions with other inmates to prevent victimization. (ECF No. 100 at 7-8, ¶ 41.) She self-isolated for 23 hours each day to protect herself from harm, which exacerbated her disabilities and mental health diagnoses. (Id. at 8, ¶ 41.) Moreover, while in B-Yard, plaintiff was not provided with her adaptive support accommodations. (Id., ¶ 42.)

On or about July 7, 2023, Correctional Officer Aceves sexually assaulted plaintiff by forcing her against a wall and "humping" her in E-Yard. At no time did Plaintiff consent to this conduct. (ECF No. 100 at 11, ¶ 58.)

**III.   Claims for Relief**

Plaintiff's SAC states four claims for relief:

1) An Eighth Amendment excessive force-sexual assault claim against defendants Drey, Aceves, and Williams in their individual capacities.

2) An Eighth Amendment deliberate indifference to serious medical needs claim against defendants Williams, Drey, Hall, Mohadjer, Hosuru, Byers, Henrey, Vicencio, McKenzie, and Samiinia in their individual capacities.

3) A First Amendment retaliation claim against defendants Drey, Williams, Hall, and McKenzie in their individual capacities.

5

4) Disability discrimination claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") against defendants Williams, Samiinia, Vicencio, Hall, Hosuru, Peterson, Bucsit, Byers, and Mohadjer in their official capacities.

(ECF No. 100 at 12-14, ¶¶ 62-78.)  Plaintiff seeks compensatory, general, special, and punitive damages in an amount to be determined at trial, as well as reasonable costs and attorneys' fees. (Id. at 15.)

## DISCUSSION

### I.   Misjoinder

Before screening under 28 U.S.C. § 1915A, the court must address the misjoinder issues clear from the face of the SAC.  District courts may refrain from conducting § 1915A screenings prior to deciding whether to dismiss or sever misjoined claims and defendants.  See, e.g., Arteaga v. Garcia, No. 1:22-cv-1292 KES EPG (PC), 2025 WL 325607, at *5 (E.D. Cal. Jan. 29, 2025) (recommending severance of misjoined claims prior to full screening); Attaway v. Hallcon's Safety Dir., No. 23-cv-2613 SPM, 2023 WL 5748740, at *3 (S.D. Ill. Sept. 6, 2023) (refraining from conducting a § 1915A review due to the misjoinder of defendants).

A plaintiff may properly assert multiple claims against a single defendant in a civil action. Fed. Rule Civ. P. 18.  However, a plaintiff may not join unrelated claims against multiple defendants in a single action.  See Fed. R. Civ. P. 20(a)(2); see also Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) ("unrelated claims against different defendants belong in separate lawsuits").  A plaintiff may bring claims against more than one defendant only if (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there is a question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2); see Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997).

The undersigned finds that plaintiff's SAC concerns two separate and unrelated occurrences: (1) the alleged denials of Glucerna LNS as both a medical treatment and reasonable accommodation, as well as denials of other DDP adaptive supports, comprising plaintiff's Eighth Amendment medical indifference claim (Claim 2) and ADA and Section 504 claims (Claim 4);

and (2) the alleged sexual assaults and subsequent housing retaliation, comprising plaintiff's Eighth Amendment excessive force-sexual assault claim (Claim 1) and First Amendment retaliation claim (Claim 3). Plaintiff cannot proceed on both occurrences without violating Federal Rule of Civil Procedure 20.

## II.     Prejudice Analysis

The next step is to determine how the case should proceed. The Ninth Circuit has advised district courts to conduct a prejudice analysis to determine whether to dismiss or sever claims pursuant to Federal Rule of Civil Procedure 21. Rush v. Sport Chalet, 779 F.3d 973, 975 (9th Cir. 2015). The Ninth Circuit specifically noted that a district court should consider "loss of otherwise timely claims if new suits are blocked by statutes of limitations." Rush, 779 F.3d at 975 (quoting DirectTV, Inc. v. Leto, 467 F.3d 842, 846–47 (3rd Cir. 2006)). This Court has interpreted the Ninth Circuit's mandate in Rush to mean that "this Court should avoid dismissal of otherwise potentially meritorious claims outside of the limitations period." Griffin v. Gonzales, No. 1:11-cv-0210 AWI, 2015 WL 1820899, at *2 (E.D. Cal. Apr. 15, 2015) (citing Rush, 779 F.3d at 975).

While the court has not yet screened plaintiff's SAC, its four claims for relief appear to be potentially meritorious for purposes of a prejudice analysis. The court is especially persuaded by the fact that plaintiff's claims were investigated and drafted by court-appointed counsel. (See ECF No. 89.) Under Rush, the court must then consider whether the claims could be barred by the statute of limitations if they were dismissed without prejudice, rather than severed.

For § 1983 actions, this court applies California's "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); see also Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002). "California's statute of limitations for personal injury claims is two years." Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Civ. Proc. Code § 335.1.[1]

---

[1] California's longer statute of limitations of ten years for claims of sexual assault against adults, see Cal. Code Civ. Proc. § 340.16(a), does not alter the two-year statute of limitations for § 1983

7

1    The limitations period is statutorily tolled for a person who is, "at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life," and "the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Cal. Civ. Proc. Code § 352.1(a); see Johnson v. State of Cal., 207 F.3d 650, 654 (9th Cir. 2000). Thus, a prisoner serving a term less than life in California may have four years to file a federal § 1983 claim. See Cato v. Darst, No. 2:17-cv-1873 TLN EFB P, 2019 WL 2249636, at *2 (E.D. Cal. May 23, 2019).

Equitable tolling may also preserve a claim that is otherwise barred by the statute of limitations by extending or suspending the accrual of the limitations period. "Equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Jones, 393 F.3d at 928 (quoting Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003)). "The purpose of California's equitable tolling doctrine 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'" (Id. (citing Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc)).)

However, a party cannot deduct the time consumed by the pendency of an action if it was later dismissed without prejudice. When an action is dismissed without prejudice, courts restore the applicable statute of limitations "as if no action had been brought." Griffin, 2015 WL 1820899, at *3 (quoting Wood v. Elling Corp., 20 Cal.3d 353, 359 (1977)).

Here, Plaintiff alleges she is serving a term of 25 years to life (ECF No. 100 at 3, ¶ 20), which is less than a life sentence for statutory tolling purposes. Cooper v. Jones, No. 2:14-cv-0453 KJM ACP, 2016 WL 8678137, at *1 (E.D. Cal. Mar. 4, 2016) (citing Martinez v. Gomez, 137 F.3d 1124, 1126 (9th Cir. 1998)). Therefore, plaintiff has four years to file a federal § 1983

---

actions. Sosa v. Hulse, No. 1:19-cv-1333 NONE EPG PC, 2021 WL 289377, at *5 n.2 (E.D. Cal. Jan. 28, 2021) (citing Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 579 (9th Cir. 2012)), report and recommendation adopted sub nom. Luis Sosa v. Hulse, No. 1:19-cv-1333 NONE EPG PC, 2021 WL 859375 (E.D. Cal. Mar. 8, 2021).

claim. Without deciding the issue or considering hypothetical equitable tolling arguments,[2] the undersigned finds it possible that dismissal without prejudice may result in all of plaintiff's claims being barred by the statute of limitations. The fact is that almost four years have passed since plaintiff initiated the action on March 23, 2021 (see ECF No. 1); components of the SAC's medical indifference (Claim 2) and disability discrimination (Claim 4) claims for relief date back to at least September 2018, and the primary nexus of events comprising her sexual assault and retaliation claims (Claims 1 and 3) began in July 2020. In sum, the court finds that prejudice to plaintiff from dismissal with leave to amend is an especially realistic outcome here.

## CONCLUSION

In Rush, the Ninth Circuit instructed courts to avoid dismissal of otherwise potentially meritorious claims outside of the limitations period. See Rush, 779 F.3d at 975; Griffin, 2015 WL 1820899, at *3. In addition, Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time…sever any claim against a party." Further, courts have broad discretion regarding severance. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1297 (9th Cir. 2000); Maddox v. County of Sacramento, No. 2:06-cv-0072 GEB EFB, 2006 WL 3201078, *2 (E.D. Cal. Nov. 6, 2006). Therefore, while the Court has not screened the SAC under 28 U.S.C. § 1915A, given the age of the case, the date of the events giving rise to plaintiff's claims, and the potential statute of limitations issues, the Court recommends that the occurrence comprising the SAC's medical indifference (Claim 2) and disability discrimination (Claim 4) claims be severed to proceed in a separate action, rather than dismissed without prejudice.

Accordingly, IT IS RECOMMENDED that:

1. Plaintiff's Eighth Amendment excessive force-sexual assault claim (Claim 1, ECF No. 100 at 12, ¶¶ 62-65) and First Amendment retaliation claim (Claim 3, ECF No. 100 at 13, ¶¶ 71-73) proceed in this action. The undersigned will screen plaintiff's claims in due course.

---

[2] While plaintiff may be able to raise equitable tolling to save any dismissed claims, the court declines to conduct that hypothetical inquiry at this early stage of the case. See Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993) ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation").

2. Plaintiff's Eighth Amendment medical indifference claim (Claim 2, ECF No. 100 at 12-13, ¶¶ 66-70) and disability discrimination claims under Title II of the ADA and Section 504 (Claim 4, ECF No. 100 at 13-14, ¶¶ 74-78) be severed from this action and proceed in a new action.

3. The Clerk of the Court be directed to:

    a. Open a separate civil action for Plaintiff Theodora Medley against defendants Williams, Drey, Hall, Mohadjer, Hosuru, Byers, Henrey, Vicencio, McKenzie, Samiinia, Peterson, and Bucsit;

    b. Assign the new action to the District Judge and Magistrate Judge to whom the instant case is assigned and make appropriate adjustment in the assignment of civil cases to compensate for such assignment;

    c. File and docket, with the same effective dates as in this action, a copy of Plaintiff's second amended complaint dated November 12, 2024 (ECF No. 100) and this order in the new action;

    d. Send Plaintiff copies of these documents bearing the new case number;

    e. Issue and send to Plaintiff New Case Documents;

    f. Send Plaintiff an application to proceed in forma pauperis;

4. Plaintiff be ordered to pay a $405.00 filing fee or complete and submit an application to proceed in forma pauperis bearing the new case number within 30 days of this order;

5. Plaintiff be advised that failure to comply with this order may result in the dismissal of Plaintiff's new case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 7, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE